# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **IN RE MICROSOFT CORP.**<br>**ANTITRUST LITIGATION**<br><br>**This Document relates to:**<br>*Sun Microsystems, Inc. v.*<br>*Microsoft Corp.,*<br><br>**Civil Action No. JFM-02-2739** | *<br>*<br>*<br>*     **MDL Docket No. 1332**<br>*<br>*     **Hon. J. Frederick Motz**<br>*<br>* |

\*     \*     \*     \*     \*   \*   \*     \*   \*     \*     \*     \*     \*     \*

### Sun Microsystems, Inc.'s Opposition To Microsoft Corporation's
### <u>Motion To Dismiss Claims 1, 4 and 10 of Sun's Second Amended Complaint</u>

Lloyd R. Day, Jr.
James R. Batchelder
Robert M. Galvin
Day Casebeer Madrid & Batchelder, LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, California 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220

Thomas M. Wilson, III
John B. Isbister
Tydings & Rosenberg LLP
100 East Pratt Street
Baltimore, Maryland 21202
Telephone: (410) 752-9714
Facsimile: (410) 727-5460

Michael A. Schlanger
Kirk R. Ruthenberg
Sonnenschein Nath & Rosenthal
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

Attorneys for Plaintiff, Sun Microsystems, Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... i

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT....................................................................................................3

    A.     Microsoft's Motion Rests On The False Premise That Sun's "Refusal
           To Port" And "Refusal To Disclose" Allegations Are Pleaded As
           Stand-Alone Section 2 Violations............................................................3

        1.     The Claims At Issue Allege A Pattern Of Anticompetitive
               Conduct, Of Which "Refusals To Port" and "Refusals To
               Disclose" Are Only A Part.................................................................3

        2.     Microsoft's Attempt To Isolate And "Dismiss" Specific
               Allegations Within A Well-Pleaded Claim Is Improper Under
               The Federal Rules Of Civil Procedure And Basic Principles of
               Antitrust Law ....................................................................................6

    B.     Microsoft's Motion Erroneously Relies On *Trinko* ...............................11

        1.     Sun's Allegations Are Properly Governed By Well-Established
               § 2 Standards, Including the Rule of Reason.............................11

        2.     *Trinko's* Narrow Holding Does Not Require Dismissal Of Any
               Sun Claim.........................................................................................13

III.    CONCLUSION...............................................................................................17

## TABLE OF AUTHORITIES

### Cases

*Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509 (10th Cir. 1984),
*aff'd,* 472 U.S. 585 (1985) .................................................................................. *passim*

*Business Elec. Corp. v. Sharp Elec. Corp.,* 485 U.S. 717 (1988)...................................13

*Caldera, Inc. v. Microsoft Corp.,* 72 F. Supp. 2d 1295 (D. Utah 1999) ................................1, 9, 13

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080 (D.C. Cir. 1998)..............14

*City of Anaheim v. S. Cal. Edison Co.,* 955 F.2d 1373 (9th Cir. 1992) ..........................................8

*Conley v. Gibson,* 355 U.S. 41 (1957) ..................................................................................6, 9, 15

*Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690 (1962).................... *passim*

*Conwood Co., L.P. v. United States Tobacco Co.,* 290 F.3d 768 (6th Cir. 2002) .....................2, 12

*Day v. Moscow,* 955 F.2d 807 (2d Cir. 1992)..............................................................................10

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 654 F. Supp. 1195
(N.D.N.Y. 1987) ............................................................................................................................7

*Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451 (1992) ...........................12, 14

*Eye Encounter, Inc v. Contour Art, Ltd.,* 81 F.R.D. 683 (E.D.N.Y. 1979)...............................7, 9

*Hospital Bldg. Co. v. Trustees of the Rex Hosp.,* 425 U.S. 738 (1976).......................................6, 9

*In re Warfarin Sodium Antitrust Litig.,* 1999-1 Trade Cases ¶ 72,457, 1998 WL 883469
(D. Del. 1998) .........................................................................................................................8, 14

*In re Microsoft Corp. Antitrust Litig.,* 274 F. Supp. 2d 743 (D. Md. 2003) ...................................3

*In re Westinghouse Securities Litig.,* 1998 WL 119554 (W.D. Pa. Mar. 12, 1998) ......................10

*Leisure v. City of Cincinnati,* 267 F. Supp. 2d 848 (S.D. Ohio 2003)...........................................10

*Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising,* 891 F.2d 1127
(4th Cir. 1989), *rev'd on other grounds,* 499 U.S. 365 (1991).........................................................9

*Otter Tail Power Co. v. United States,* 410 U.S. 366 (1973) ............................................5, 14, 16

*Palmer News, Inc. v. ARA Servs., Inc.,* 476 F. Supp. 1176 (D. Kan. 1979) ...............................6, 7

*Republican Party of North Carolina v. Martin,* 980 F.2d 943 (4th Cir. 1992).........................6, 13

*Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324 (4th Cir. 1989)............................................6

*South Side Drive-In Co. v. Warner Bros. Pictures Distrib. Co.*, 30 F.R.D. 32 (E.D. Pa. 1962) ...........................................................................................................................10, 11

*Standard Oil Co. v. United States*, 221 U.S. 1 (1911) ....................................................13

*Tate v. Pacific Gas & Elec.*, 230 F. Supp. 2d 1072 (N.D. Cal. 2002) ......................................8, 16

*Taylerson v. American Airlines, Inc.*, 183 F. Supp. 882 (D.S.N.Y. 1960) ......................................7

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ........................................................7

*United States ex rel. Ackley v. IBM Corp.*, 110 F. Supp. 2d 395 (D. Md. 2000)...........................10

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966)...................................................11

*United States v. Microsoft Corp.*, 84 F. Supp. 2d 9 (D.D.C. 1999)...............................................16

*United States v. Microsoft*, 253 F.3d 34 (D.C. Cir.) *cert. denied*, 534 U.S. 952 (2001) ...... *passim*

*United States v. Mitchell*, 271 U.S. 9 (1926) ...................................................................8

*Verizon Comm., Inc. v. Trinko, LLP*, 124 S. Ct. 872 (2004) ................................................. *passim*

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535 (4th Cir. 1998).............................9

*Webster v. Fall*, 266 U.S. 507 (1925) ...........................................................................8

## Rules

Fed. R. Civ. P. 8...........................................................................................................6

Fed. R. Civ. P. 8(a)(2)....................................................................................................6

Fed. R. Civ. P. 8(e)(2)....................................................................................................7

Fed. R. Civ. P. 12(b)(6)............................................................................................ *passim*

Fed. R. Civ. P. 12(f)....................................................................................................10

Fed. R. Civ. P. 56.........................................................................................................13

## Statutes

15 U.S.C. § 2 ...................................................................................................... *passim*

47 U.S.C. § 15 et seq....................................................................................................14

## Other Material

Noer-Pennington Doctrine ...................................................................................................................8

II Philip E. Aveeda & Herbert Havenkamp, Antitrust Law, ¶ 310, at 147 (2d ed.
2000) .................................................................................................................................................8

## I.  INTRODUCTION

Microsoft's motion to dismiss rests on two false premises, both of which must be true for Microsoft's motion to have merit, but neither of which is.

First, Microsoft's motion rests on the false premise that Sun's Second Amended Complaint ("SAC") alleges that Microsoft's "refusal to port" and "refusal to disclose" constitute stand alone § 2 violations.  15 U.S.C. § 2 ("§ 2").  It does not.  Instead, Sun's SAC alleges that Microsoft's "refusal to port" and "refusal to disclose" are parts of a larger pattern of conduct that includes (1) Microsoft's unlawful maintenance of monopoly power in the PC-OS and office-productivity suite markets, and (2) its exploitation of that power to institute and propagate interoperability and/or competitive substitution problems for customers and competitors through product bundling, developer deception, exclusionary licensing and distribution arrangements, and tying.  Sun's SAC alleges that, *collectively,* Microsoft's conduct excludes competition in the PC-OS, workgroup server, and office-productivity suite markets by elevating and sustaining barriers to competition with Microsoft's monopolized products, and with Microsoft's complementary products in adjacent markets.

Because Microsoft's "refusal to port" and "refusal to disclose" are alleged to be parts of an interrelated pattern of conduct that illegally maintains and expands Microsoft's monopoly power, Microsoft's attempt to use Rule 12(b)(6) to isolate and "dismiss" certain specific acts from the total pattern of conduct alleged by Sun to be anticompetitive is improper.  Dismissal cannot be obtained by "tightly compartmentalizing the various factual components" of an interrelated pattern of conduct comprising an alleged antitrust claim.  *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962).  Allowing Microsoft "to carve plaintiff's complaint" into discrete allegations, not asserted as stand-alone claims, would not only "offend the purpose behind § 2, but also turn[] basic civil procedure principles on their head."  *Caldera v. Microsoft Corp.*, 72 F. Supp. 2d 1295, 1309 (D. Utah 1999).  In short, Sun need not show that each act of Microsoft, in isolation, violates § 2.  "It is enough

that taken together they are sufficient to prove the monopolization claim." *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1522 n.18 (10th Cir. 1984), *aff'd*, 472 U.S. 585 (1985). Because Microsoft's motion does not attack any Sun claim in its entirety, Microsoft's motion must be denied.

Second, Microsoft's motion is based on the erroneous premise that the Supreme Court's recent decision in *Verizon Comm., Inc. v. Trinko*, 124 S. Ct. 872 (2004), applies to and governs Claims 1, 4, and 10 of Sun's SAC. It does not. Microsoft's misleading characterization of Sun's allegations notwithstanding, Sun's claims detail the broad and rapacious misconduct of a classic monopolist in circumstances very different from those present in *Trinko. See, e.g., Conwood Co., L.P. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002). The SAC not only alleges that the foregoing conduct has enabled Microsoft to acquire and/or maintain its monopoly power, but it also alleges why and how that conduct is anticompetitive in the markets and circumstances at issue here. Nothing in *Trinko* alters the standard of liability for the conduct Sun alleges under § 2 — the fact-laden rule of reason-based balancing test articulated in *United States v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir.) (en banc), *cert. denied*, 534 U.S. 952 (2001).

Incredibly, Microsoft apparently contends that *Trinko* creates a per se defense to liability for conduct of a monopolist that forecloses competitive substitution and elevates barriers to competition. It does not. To the contrary, *Trinko* merely holds, based on an intensely fact-specific analysis — in the context of a closely regulated industry — that courts should generally decline to apply antitrust principles to reinforce a regulatory regime that requires a monopolist to deal with its rivals. By contrast, Sun is suing Microsoft, an adjudicated unlawful monopolist, in an unregulated software market, based on far more sweeping and egregious anticompetitive conduct, the purpose and effect of which is to eliminate even the threat of competition in the markets monopolized by Microsoft. *Trinko's* limited holding does not govern Sun's allegations.

## II. ARGUMENT

### A. MICROSOFT'S MOTION RESTS ON THE FALSE PREMISE THAT SUN'S "REFUSAL TO PORT" AND "REFUSAL TO DISCLOSE" ALLEGATIONS ARE PLEADED AS STAND ALONE SECTION 2 VIOLATIONS.

Rather than attack any claim alleged by Sun in its entirety, Microsoft's motion asks this Court to misapply Rule 12(b)(6) to isolate, pick off, and "dismiss" specific acts alleged within Sun's claims. Because the specific acts targeted by Microsoft's motion are pleaded as part of a larger interrelated set of acts of Microsoft that effectuate its anticompetitive objectives, Microsoft's motion is both procedurally and substantively defective.

#### 1. The Claims At Issue Allege A Pattern Of Anticompetitive Conduct, Of Which "Refusals To Port" And "Refusals To Disclose" Are Only A Part.

Microsoft mischaracterizes the challenged SAC claims as alleging merely a passive "failure to assist a rival."[1] To the contrary, the challenged claims allege that Microsoft elevated and sustained barriers to competition in Microsoft's monopolized markets and adjacent markets by engaging in a pattern of anticompetitive conduct that includes not only "refusals to port" and "refusals to disclose," but also (1) Microsoft's unlawful maintenance of monopoly power in the PC-OS and office-productivity suite markets, and (2) its exploitation of that power to institute and propagate interoperability problems for customers and competitors through product bundling, developer deception, exclusionary licensing and distribution arrangements, and tying.

For example, with respect to Microsoft's Active Directory, Sun alleges that Microsoft did not simply "refuse to disclose" technical information, but, rather, engineered its standards and protocols to hinder interoperability. (SAC ¶¶ 163, 189.) The same is true of the technical information regarding Windows server operating systems, *see id.* ¶ 142 (Microsoft acted to degrade "the limited

---

[1] In its memorandum in support of its motion to dismiss ("Mem."), Microsoft also incorrectly invokes this Court's ruling in the licensee cases, where the plaintiffs expressly relied upon the essential facilities doctrine. (Mem. at 9). *See In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 743, 744 (D. Md. 2003). Sun does not so plead.

#414498v.1

interoperability that previously existed in the marketplace between Microsoft's PC operating systems and non-Microsoft workgroup operating systems"); ¶ 152 (Microsoft modified Windows PC-OS to restrict interoperation with non-Microsoft workgroup servers); ¶ 154 (Microsoft "intentionally created barriers to interoperation"), ¶ 155 (Microsoft foreclosed "even the limited degree of interoperability it previously allowed"); and technical information regarding Exchange and Outlook, *see, e.g., id.* ¶¶ 204-5 (Microsoft "create[d] technical dependencies" and "removed some functionality when Outlook is used to access a collaborative server other than Exchange").

Thus, Microsoft *manipulates* – not just passively "fails to disclose" – the interoperability features of its monopolized products in order to control "which products and services in adjacent markets are capable of effectively interoperating with its monopoly products." (SAC ¶ 15.) Microsoft's conduct deprecates competing products, and forces developers to limit their application development, and consumers to limit their purchases, to Microsoft's platforms, products, and services because they alone can interoperate fully and effectively with Microsoft's unlawfully maintained monopoly products. *Id.*

The same is true of Microsoft's selective refusal to port its monopoly products. Microsoft's porting policy defies economic self-interest in a competitive market, but makes perfect sense as part of Microsoft's overall strategy to maintain the applications barrier to competition and, hence, its illegal PC-OS monopoly. (SAC ¶ 199.)

For example, Microsoft cites paragraph 226 as alleging "failure to port" the .NET Framework (Mem. at 3). Read as a whole, that paragraph alleges that Microsoft used the delay and reduced demand for adoption of the Java platform to develop and release its own version of middleware platform, .NET, that largely copies and mimics many of the pioneering advances of the Java platform, but "was designed for use with Windows only, and is not available for porting to any non-Microsoft operating system." (SAC ¶ 226.) Hence, more than a mere refusal to port .NET is involved. Instead, paragraph 226

4

describes Microsoft's creation of a platform that (a) is the fruit of illegal conduct, and (b) was expressly designed, unlike the Java platform, "to maintain and expand the applications barrier to competition, not erode it." *Id.*

Likewise, paragraphs 199 and 200 do not merely allege "failure to port" Microsoft Office (Mem. at 3), but, rather, that Microsoft deceived competitors, software developers and consumers; engaged in exclusionary contracting and pricing practices; and (once again) ***created*** technical barriers to interoperability. (SAC ¶ 198.) Microsoft also illegally ***prevented others*** from porting Office to other platforms; and used the threat of withdrawing Office from existing licensees to exact anticompetitive agreements directly foreclosing competition. (SAC ¶ 199.)

Microsoft similarly mischaracterizes paragraph 201 as alleging that Microsoft simply failed to disclose Windows APIs (Mem. at 5), when in fact, it alleges that Microsoft gave selective preferential access to "Microsoft developers working on Office," while denying that access to developers for competitive rivals. Yet again, this aggressive anticompetitive conduct forecloses competition and further entrenches the PC-OS monopoly.

Thus, Microsoft is wrong to say that it has merely chosen, as a matter of "valid business reasons" (Mem. at 12), not to "share proprietary technical information." *Id.* at 10. Microsoft has designed its products to thwart interoperability rather than promote efficiency (SAC ¶¶ 145, 198); has refused to port applications regardless of whether it would be economically rewarding to do so (*id.* ¶ 199); has affirmatively blocked others from porting Windows applications (*id.*); and has selectively withheld technical information from those, like Sun, whom Microsoft perceives as a threat to the pillars of its monopoly, while sharing such information with others in the marketplace. (*Id.* ¶ 159.) *See Otter Tail Power Co. v. United States,* 410 U.S. 366, 377 (1973) (use of monopoly power to refuse to sell to some customers, while providing that same service to others, "destroy[s] threatened competition"); *see Trinko,*

124 S. Ct. at 880. Unquestionably, these allegations "reveal[]" Microsoft's "distinctly anticompetitive bent." (Mem. at 10, quoting *Trinko*, 124 S. Ct. at 880.)[2]

**2.    Microsoft's Attempt To Isolate And "Dismiss" Specific Allegations Within A Well-Pleaded Claim Is Improper Under The Federal Rules Of Civil Procedure And Basic Principles Of Antitrust Law.**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The Court's inquiry "is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). For these reasons, dismissal under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (reversing dismissal, stating that "a rule 12(b)(6) motion should be granted only in very limited circumstances"). Moreover, because the public interest is served by preventing and redressing antitrust violations, motions to dismiss antitrust complaints are measured by a "concededly rigorous standard." *Hospital Bldg. Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746 (1976).

Here, Microsoft does "not dispute that the complaint adequately sets forth the[] elements" of an antitrust claim; nor can it "dispute that the liberal pleading requirements of F. R. Civ. P. 8 apply here. The age of fact pleading is past; antitrust pleadings are to be construed liberally." *Palmer News, Inc. v.*

---

[2] Microsoft mischaracterizes the SAC in additional ways as well. Microsoft falsely states, for example that Claim 4 is based on nondisclosure of technical information regarding its Windows server operating systems (motion to dismiss at ¶ 2(a)), when in fact Claim 4 implicates PC-OS protocols and APIs (SAC ¶¶ 141-44).

6

*ARA Servs., Inc.,* 476 F. Supp. 1176, 1183 (D. Kan. 1979).[3]  Instead, Microsoft's motion purports to seek "dismissal" of certain claims because it thinks some allegations in the complaint may not independently support the claims – even though those claims are supported by other, independent allegations, which Microsoft does *not* challenge.

Microsoft's motion is improper under the Federal Rules.  "A complaint which contains alternative statements of the claim, some of which are insufficient, will not be dismissed if any one alternative statement supports the claim." *Taylerson v. American Airlines, Inc.*, 183 F. Supp. 882, 884 (S.D.N.Y. 1960); *Eye Encounter, Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683, 689 (E.D.N.Y. 1979) (complaint should not be dismissed "if one of the alternative statements is insufficient but any one supports the claim"); *see generally* Fed. R. Civ. P. 8(e)(2).

In *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 654 F. Supp. 1195 (N.D.N.Y. 1987), as here, the antitrust defendant's "motion papers [were] styled to request dismissal pursuant to F.R.C.P. 12(b)(6)," even though "defendant does not seek a complete dismissal of this action," but rather, claimed (a) that plaintiff "cannot obtain relief in either Counts I or II with respect to actions taken by Conrail prior to July 15, 1982," because of the statute of limitations; and (b) "that the acts described in Count II do not constitute attempts to monopolize, but rather violations of state contract or landlord/tenant law." *Id.* at 1199.  Defendant argued that allegations concerning its contractual conduct under the lease could not be actionable.  The court held that "[t]his argument has no merit on this motion to dismiss," because plaintiff had otherwise "appropriately alleged that the defendant's actions were undertaken with the purpose to create or maintain a monopoly." *Id.* at 1203.  *Dismissal is "inappropriate" where defendant "asks this court to dismiss portions of [plaintiff's antitrust] claim.  Such a piecemeal approach to an antitrust claim is improper."* *Id.* at 1204 (emphasis added).

---

[3]  "No heightened pleading requirements apply in antitrust cases. '[A] short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases, as in other cases under the Federal Rules.'" *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001).

7

Further, it is a settled precept of antitrust law that, "[i]n analyzing an antitrust complaint" under the rigorous standard for 12(b)(6) motions, "'plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each.'" *In re Warfarin Sodium Antitrust Litig.*, 1999-1 Trade Cases ¶ 72,457, 1998 WL 883469 (D. Del. 1998) (quoting *Continental Ore*, 370 U.S. at 699 (1962)).[4] For these reasons, "it would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect . . . We are dealing with what has been called the 'synergistic effect' of the mixture of the elements." *City of Anaheim v. S. Cal. Edison Co.,* 955 F.2d 1373, 1376 (9th Cir. 1992).

Microsoft's motion flies in the face of this settled antitrust pleading rule. Microsoft's aggressive institution and expansion of technical barriers to interoperability with, or substitution of, competitive products is far from a passive refusal to deal; it is part and parcel of a comprehensive set of acts whose intended and actual effect is to elevate and maintain barriers to competition. *See also Aspen,* 738 F.2d at 1522 n.18 (10th Cir. 1984) ("Each of the six [aspects of defendant's exclusionary conduct] viewed in isolation need not be supported by sufficient evidence to amount to a § 2 violation. It is enough that taken together they are sufficient to prove the monopolization claim"); II Areeda, Blair & Hovenkamp, *Antitrust Law* ¶ 310, at 147 (2d ed.) ("In a monopolization case, conduct must always be analyzed 'as a

---

[4] Inexplicably, Microsoft cites *Warfarin* (along with *Tate v. Pacific Gas & Elec.*, 230 F. Supp. 2d 1072 (N.D. Cal. 2002)) as "authority" for the proposition that Rule 12(b)(6) can be used to "dismiss[]" a § 2 claim "to the extent that it relied on allegations of conduct not within purview of antitrust laws." (Mem. at 6 n. 5.) Neither case addressed (much less ruled on) any such proposition. Where a "question was not presented to the court for decision, and no such question was considered or decided," the case is not authority for that proposition. *United States v. Mitchell,* 271 U.S. 9, 14 (1926); *Webster v. Fall,* 266 U.S. 507, 511 (1925). Furthermore, neither *Tate* nor *Warfarin* "dismissed" complaint paragraphs that were part of a well-pled § 2 claim alleging an interrelated pattern of anticompetitive conduct. Instead, they found plaintiff did not adequately plead the elements of certain independent claims (*i.e.*, predatory pricing, product disparagement), or that some of defendants' statements to government bodies were obviously immune under the *Noerr-Pennington* doctrine. Indeed, *Warfarin* relied on *Continental Ore* to *deny* dismissal of a § 2 claim that, like Sun's, relied on the combined, "synergistic" effect of defendant's conduct. *See Warfarin*, 1998 WL 883469 at *11 ("plaintiff may premise its Sherman § 2 claim on defendant's" various acts which were "part of its allegedly multifaceted effort to restrain trade in the oral anticoagulant market"; finding "the combined effect of defendant's conduct" had "the 'synergistic effect' of harming competition").

8

whole'"). Viewed "as a whole," *Aspen*, 738 F.2d at 1522 n.18, Sun has unquestionably pleaded a "set of

facts . . . which would entitle [it] to relief." *Conley*, 355 U.S. at 45-46.[5]

The court in *Caldera* rejected Microsoft's similarly improper attempt to carve up an antitrust

claim for purposes of summary judgment, finding "[t]he Supreme Court's directive in *Continental Ore*

that a plaintiff should not be denied the 'full benefit of its proof' is equally applicable here":

> Caldera claims that Microsoft is a monopolist that engaged in
> anticompetitive conduct to preserve its monopoly. The alleged
> anticompetitive conduct is set forth in general terms in the foregoing
> background portion of this opinion. ***Plaintiff's entire case is based on the***
> ***synergy of all of this conduct to demonstrate anticompetitive intent and***
> ***effect.*** Plaintiff has not averred a separate claim of product
> disparagement, ***or a "refusal to deal" claim***, or any other independent
> claim in support of its overall § 2 claim. Consequently, the Court sees ***no***
> ***reason why plaintiff should now be required to submit to Microsoft's***
> ***reclassification of its claim and to independently support each of the***
> ***seven "claims" as classified by Microsoft as an independent legal claim***
> upon which relief could be granted and liability could be independently
> based, in order to survive summary judgment.

*Id.* at 1309 (emphasis added).

The same is true here. *Caldera*'s reasoning in the context of summary judgment applies *a*

*fortiori* in this motion to dismiss context. *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535,

539 (4th Cir. 1998) (reversing dismissal, noting that, "in antitrust cases, where 'the proof is largely in

the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for

discovery should be granted very sparingly" (quoting *Hospital Bldg. Co.,* 425 U.S. at 746)); *see also Eye*

*Encounter, Inc.,* 81 F.R.D. at 689 ("under notice pleading requirements . . . while it is desirable that the

pleadings give notice of some theory supporting recovery, it is unnecessary for the pleader to delineate

the theories or to choose among alternative theories of relief").

---

[5] Even if the paragraphs Microsoft challenges described purely lawful conduct (which they do not), they
would still be relevant to the damages recoverable by Sun. *See Omni Outdoor Advertising, Inc. v.
Columbia Outdoor Advertising*, 891 F.2d 1127, 1144 (4th Cir. 1989) (damages may be recoverable for
lawful conduct that exacerbates unlawful conduct), *rev'd on other grounds*, 499 U.S. 365 (1991).

9

Put another way, Rule 12(b)(6) permits dismissal only for "fail[ure] to state a claim upon which relief can be granted" – it does not permit an attack on selected allegations *within* a claim. That is the office of a Rule 12(f) motion to strike. *In re Westinghouse Securities Litig.*, 1998 WL 119554 at *2 (W.D. Pa. Mar. 12, 1998) ("Rule 12(b)(6) is the appropriate procedural mechanism for dismissing an entire claim or complaint, as opposed to individual allegations in support of it, as legally insufficient . . . To the extent plaintiffs wish to excise individual allegations, Rule 12(f) provides the appropriate vehicle for doing so," citing *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir. 1992)).

However, the subject of a motion to strike is limited to "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). None of those adjectives applies to the allegations Microsoft attacks in its motion. "Rule 12(f) motions are not favored and will be denied unless the matter under challenge has 'no possible relation to the controversy and may prejudice the other party.'" *United States ex rel. Ackley v. IBM Corp.*, 110 F. Supp. 2d 395, 405-6 (D. Md. 2000). "Motions to strike factual allegations will be denied when, although the averments state no independently actionable claim, they 'are so connected with the subject matter of the suit that it might be deemed to present a question of law or fact that the court ought to hear.'" *In re Westinghouse Securities Litig.*, 1998 WL 119554 at *2; *see also Leisure v. City of Cincinnati*, 267 F. Supp. 2d 848, 855-56 (S.D. Ohio 2003) ("not every paragraph of a complaint must stand in isolation to state a claim," but rather, "[t]he law allows Plaintiffs' Complaint to place the [complained-of incident] into a larger historical perspective").

Sun's allegations regarding Microsoft's selective refusal to disclose protocols and port its applications illuminate the results and further extension of Microsoft's strategy to abuse its monopoly power to anticompetitive effect. Especially in an antitrust context, there is no basis for striking those allegations, even if they only put in context Microsoft's illegal conduct and were not intrinsic to that conduct. *See, e.g., South Side Drive-In Co. v. Warner Bros. Pictures Distrib. Co.*, 30 F.R.D. 32, 34 (E.D. Pa. 1962) ("Motions to strike . . . are not generally looked upon with favor and courts have been

10

even less sympathetic to them in anti-trust litigation. Allegations in a complaint which supply background or historical material or which are of an evidentiary quality will not be stricken unless unduly prejudicial to defendant"). In fact, these allegations are an important and intrinsic part of Microsoft's pattern of monopolization.

**B.    MICROSOFT'S MOTION ERRONEOUSLY RELIES ON *TRINKO*.**

As demonstrated above, whether the allegations Microsoft challenges in its motion are independently actionable cannot be the proper basis for "dismissing" anything. In any event, *Trinko*, the case on which Microsoft's motion rests, does not govern or apply to Sun's allegations — which, once again, involve far more than a mere "failure to assist rivals."

**1.    Sun's Allegations Are Properly Governed By Well-Established § 2 Standards, Including The Rule of Reason.**

A plaintiff pleading a § 2 claim need allege only that it has been injured by anticompetitive conduct, undertaken by a party with monopoly power, in furtherance of the acquisition or maintenance of that monopoly power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966) ("The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.") Claims 1, 4 and 10 of Sun's SAC unquestionably plead these elements; and Microsoft does not contend otherwise. Indeed, these SAC claims go far beyond the minimum pleading requirements of a § 2 violation by not only identifying specific conduct as anticompetitive, but also explaining why it is anticompetitive.

Contrary to Microsoft's misleading and incorrect characterization of Sun's claims, Sun's § 2 claims are not based on a mere "refusal to deal" with or "assist" competitors. Rather, Sun's claims are based on a comprehensive pattern of interrelated acts that foreclose and stifle competition in the PC-OS,

11

workgroup server, and office-productivity suite markets, the type of § 2 violation adjudicated in

*Conwood,* 290 F.3d at 768.

The SAC alleges that Microsoft has illegally maintained and achieved monopoly power in these

markets. As Justice Scalia observed in *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S.

451 (1992):

> Where a defendant maintains substantial market power, his activities are examined
> through a special lens: Behavior that might otherwise not be of concern to the
> antitrust laws – or that might even be viewed as procompetitive – can take on
> exclusionary connotations when practiced by a monopolist.

*Id.* at 488 (Scalia, J., dissenting).[6]

The SAC also alleges that but for Microsoft's illegal maintenance of its monopoly in the PC-

OS and office-productivity suite markets, and its illegal attempt to monopolize the workgroup server

market, that Microsoft would not have the power to institute or propagate technical barriers to

interoperability and/or substitution by competing products, or to refuse to port its monopolized

Office suite application to competing runtime products. (*See, e.g.,* SAC ¶¶ 14-15.) However,

because Microsoft has illegally maintained and/or acquired monopoly power in these markets, it

does possess just such power. As the SAC alleges, through developer deception, product bundling,

tying, exclusionary license and distribution arrangements, and other misconduct, Microsoft is further

entrenching and expanding its unlawful monopolies by instituting and propagating barriers to

interoperation and/or substitution for its desktop and server operating system products.

Ultimately, whether Microsoft's acts (including its attempts to thwart interoperability with its

monopoly products) are illegal will be determined under a balancing test analogous to the rule of reason,

---

[6] *Continental Ore,* 370 U.S. at 707 ("[I]t is well settled that acts which are in themselves legal lose that
character when they become constituent elements of an unlawful scheme.")

*i.e.*, the court will assess "whether the monopolist's conduct on balance harms competition and is therefore condemned as exclusionary for purposes of § 2." *United States v. Microsoft Corp.,* 253 F.3d at 58; *Standard Oil Co. v. United States*, 221 U.S. 1 (1911).[7]  The balancing of anticompetitive effects and business justifications under the rule of reason is, of course, a question of fact not susceptible to resolution on a motion to dismiss. *Business Elec. Corp. v. Sharp Elec. Corp.*, 485 U.S. 717, 723 (1988) (under the rule of reason, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition"); *Republican Party of North Carolina*, 980 F.2d at 952 ("a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  The earliest point to bring the balancing test to bear would be on a Rule 56 motion for summary judgment after the conclusion of fact and expert discovery.  Even then, Microsoft's "carve out" approach, still based on the same false premise that these isolated allegations have been pleaded as stand-alone claims, should fail. *Caldera,* 72 F. Supp. 2d at 1309.

### 2.    *Trinko*'s Narrow Holding Does Not Require Dismissal Of Any Sun Claim.

There is no merit to Microsoft's suggestion that *Trinko* somehow trumps the well-established rule of reason test or creates, in effect, a per se defense to any allegation of anticompetitive conduct that involves, as part of that conduct, a refusal to deal with rivals.  To the contrary, *Trinko* is far more limited than Microsoft has portrayed.  Its holding is based on a legislative scheme imposing a duty of access in a regulated industry, where the regulatory authority explicitly addresses competition issues, and in which "a refusal to cooperate" or "insufficient assistance in the provision of service to rivals" — not

---

[7] Under the rule of reason, once a plaintiff has established a *prima facie* case, the monopolist may "proffer a 'procompetitive justification' for its conduct," *i.e.*, "a nonpretextual claim that its conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal." *Microsoft Corp.*, 253 F. 3d at 59.  If this procompetitive justification is unrebutted, "then the plaintiff must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit." *Id.*

affirmative anticompetitive conduct — is the sole basis for the alleged antitrust violation. 124 S. Ct. at 879-80.[8]

In *Trinko,* the only allegation in support of the defendant's alleged § 2 liability rested on its refusal to deal with a rival. Consequently, the Court in *Trinko* did not address any of the other, "multifaceted" grounds for § 2 liability (*Warfarin*, 1998 WL 883469 at *11), such as those alleged in Sun's SAC, including Microsoft's institution and propagation of technical barriers to interoperability and/or substitution through its illegally maintained monopoly power, developer deception, product bundling, tying, or exclusionary licensing and distribution arrangements. Nowhere does *Trinko* purport to limit or wholly define the variety of actionable conduct that may give rise to a § 2 violation. Nor could it, consistent with settled antitrust jurisprudence, define for all times and in all contexts the "myriad" forms of actionable anticompetitive conduct. *Microsoft Corp.,* 253 F.3d at 58.[9] *See generally Eastman Kodak Co.*, 504 U.S. at 451; *Otter Tail*, 410 U.S. at 366.

Certainly, the Court did not address in *Trinko* a case, such as this, where the defendant is an adjudicated monopolizer, in an unregulated industry, that is alleged to engage in a succession of acts, each of which interrelates with and reinforces the anticompetitive effect of the others. Nor does *Trinko* deal with an unlawful monopolist that has instituted and propagated technical barriers to interoperability with and/or substitution by competing products through means of unlawful monopoly maintenance, developer deception, product bundling, tying, and exclusionary licensing and distribution agreements,

---

[8] There can be no question that the unique regulatory context in *Trinko* was a primary consideration in the Court's analysis in that case. *Id.* at 881-82 (emphasizing as a "factor of particular importance" the "existence of a regulatory structure designed to deter and remedy anticompetitive harm" and finding the Telecommunications Act's regulatory regime "an effective steward of the antitrust function"). "Antitrust analysis must always be attuned to the particular structure and circumstances of the industry at issue." *Id.* at 881.

[9] "'Anticompetitive conduct' can come in too many different forms, and is too dependent upon context, for any court or commentator ever to have enumerated all the varieties." *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1087 (D.C. Cir. 1998).

14

all for the express purpose and with the resulting effect of excluding competition in its monopolized markets.

Microsoft is simply wrong to contend that *Trinko* held "the specific facts of *Aspen Skiing*" (*i.e.*, "the termination of an established course of dealing regarding a product or service made generally available to the public") are, once and for all, "the standard against which the complaint should be tested." (Mem at 1.)  The ultimate "standard" for refusal to deal and other § 2 cases has always been, and remains after *Trinko*, whether the conduct at issue was "prompted not by competitive zeal but by anticompetitive malice." 124 S. Ct. at 880.  Thus, the basic § 2 question remains whether "Microsoft maintained its power not through competition on the merits, but through unlawful means." *Microsoft Corp.*, 253 F.3d at 50.  Certainly, Sun's SAC more than sufficiently pleads as much for purposes of Rule 8. *See Conley*, 355 U.S. at 45-46; *Continental Ore*, 370 U.S. at 699.

Finally, even if Sun's "refusal to port" and "refusal to disclose" allegations had been pleaded by Sun as separate, stand alone § 2 violations, such allegations would still fall comfortably within, and are fully consistent with, the holding in *Aspen*, which the Supreme Court specifically reaffirmed in *Trinko*.

(1)    Consistent with *Aspen*, Sun alleges that Microsoft first cooperated with rivals in sharing interface codes and protocols, and in facilitating the porting of Microsoft software to rival platforms, and then ceased to do so with anticompetitive intent and effect.  (SAC ¶¶ 142; 155-61.)[10]  Indeed, Microsoft selectively deals, *i.e.,* it provides some but not all necessary information, and in some instances agrees to deal with some but no other rivals, and even agrees to deal with some but not other rivals on more favorable terms. *Id.*, ¶¶ 46; 250-52.  Microsoft thus uses cooperation as a coercive tool, *i.e.,* it doles out

---

[10] The lack of a prior "course of dealing with [defendant's] rivals" was important in *Trinko* only because there, unlike *Aspen*, defendant's "prior conduct shed[] no light upon the motivation of its refusal to deal," *i.e.*, whether it was "prompted . . . by anticompetitive malice." 124 S. Ct. at 880.  The opposite is true here.  Microsoft's prior conduct, as extensively detailed in the SAC, and adjudicated by the D.C. District and Circuit Courts, vividly illustrates – as in *Aspen* – that anticompetitive intent motivated its "refusals to deal" with, and other predatory conduct against, threatening rivals.  And, again, *Aspen* does not exhaust the types of conduct from which that anticompetitive purpose may be inferred.

greater measures of cooperation to those rivals that most agree to adhere to its business strategies, which often involve exclusivity. *See also Otter Tail*, 410 U.S. at 377; *United States v. Microsoft Corp.*, 84 F. Supp. 2d 9, 32-34 (D.D.C. 1999).

    (2)    Consistent with *Aspen*, Sun also alleges that, but for Microsoft's adjudicated bad acts, software markets would have been open to competition – which would have made it in Microsoft's self-interest, and in furtherance of its profitability, to disclose protocols and facilitate porting. (*E.g.,* SAC ¶199.) In other words, having used anticompetitive means to maintain a monopoly in the PC-OS market, to establish and maintain a monopoly in the office-productivity suite market, and to attempt to obtain a monopoly in the workgroup server market, Microsoft is now using the refusal to port or allow interoperation with its monopoly products further to injure its competitors. Thus, not disclosing what Microsoft engineered to be noninteroperable is the poison fruit of Microsoft's illegal PC-OS monopoly maintenance, which "systematically" extends its anticompetitive hold on adjacent workgroup server and office productivity suite markets, thereby reinforcing the barriers to entry and competition in the PC-OS market. *See id.* ¶ 16; *Tate* 230 F. Supp. 2d at 1081 (defendant attempted to use its monopoly "to suffocate nascent competitive technology in the downstream market within its service territory").

    (3)    Consistent with *Aspen*, Sun alleges that Microsoft had an anticompetitive intent and effect in blocking certain disclosures and in undermining porting, without offsetting competitive justifications. "[T]he record in this case comfortably supports an inference that the monopolist made a deliberate effort to discourage its customers from doing business with its smaller rival." *Aspen*, 472 U.S. at 610. Indeed, as discussed above, the technical barriers that Microsoft refuses to disclose are, as Sun alleges, constructed and propagated to preclude interoperability and/or competitive substitution. That is a far cry from Verizon's right to develop its legitimate "infrastructure," a right that the Court held was praiseworthy in *Trinko*. 124 S. Ct. at 879.

The allegations that Microsoft attacks set forth affirmative conduct that elevates and sustains barriers to competition. Sun alleges that this conduct is anticompetitive; that Microsoft has undertaken this conduct illegally to acquire or maintain monopoly power in the PC-OS, workgroup server, and office-productivity suite markets; and that this conduct has injured Sun. This alleged conduct was actionable under §2 before *Trinko*, and is just as actionable today.

## III. CONCLUSION

For the foregoing reasons, Microsoft's motion to dismiss should be denied in its entirety.

Dated: March 12, 2004

Lloyd R. Day, Jr.
James R. Batchelder
Robert M. Galvin
Day Casebeer Madrid & Batchelder, LLP
20300 Stevens Creek Blvd., Suite 400
Cupertino, California 95014
Telephone: (408) 873-0110
Facsimile: (408) 873-0220

Michael A. Schlanger
Kirk R. Ruthenberg
Sonnenschein Nath & Rosenthal
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
Telephone: (202) 408-6400
Facsimile: (202) 408-6399

_____ */s/ John B. Isbister* _____
Thomas M. Wilson, III (Federal Bar #02560)
John B. Isbister (Federal Bar #00639)
Tydings & Rosenberg LLP
100 East Pratt Street
Baltimore, Maryland 21202
Telephone: (410) 752-9714
Facsimile: (410) 727-5460

Attorneys for Plaintiff, Sun Microsystems, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12 day of March, 2004, a copy of the foregoing Sun

Microsystems, Inc.'s Opposition to Microsoft Corporation's Motion to Dismiss Claims I, IV and X of

Sun's Second Amended Complained was served electronically and/or by overnight delivery to:

Bruce J. Wecker, Esquire
Hosie, Frost, Large & McArthur
Spear Street Tower
One Market Street, 22nd Floor
San Francisco, California 94105

Attorney for Burst.com, Inc.

David B. Tulchin, Esquire
Steven L. Holley, Esquire
Marc DeLeeuw, Esquire
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

Thomas W. Burt, Esquire
Richard J. Wallis, Esquire
Linda K. Norman, Esquire
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052

David T. McDonald, Esquire
Karl J. Quackenbush, Esquire
Preston, Gates & Ellis LLP
925 Fourth Avenue
Suite 2900
Seattle, Washington 98104

Matthew L. Larrabee, Esquire
Dale A. Rice, Esquire
A. Mari Mazour, Esquire
Heller, Ehrman, White & McAuliffe LLP
333 Bush Street
San Francisco, California 94104

#414498v.1

Darryl Snider, Esquire
Jon L. Rewinski, Esquire
John M. Landry, Esquire
Heller, Ehrman, White & McAuliffe LLP
601 S. Figueroa Street
40th Floor
Los Angeles, California 90017-5758

Michael F. Brockmeyer, Esquire
Piper Rudnick LLP
6225 Smith Avenue
Baltimore, Maryland 21209

       Attorneys for Microsoft Corporation


            */s/ John B. Isbister*
            John B. Isbister

#414498v.1